**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ALLOY BELLOWS & PRECISION** | ) | **CASE NO.1:15CV494** |
| **WELDING, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **JASON COLE,** | ) | <u>**OPINION AND ORDER**</u> |
| | ) | |
| **Defendant.** | ) | |

<u>**CHRISTOPHER A. BOYKO, J:**</u>

This matter is before the Court on Defendant Jason Cole's Motion to Dismiss or, Alternatively, to Transfer Venue, and Memorandum in Support (ECF # 12).  For the following reasons, the Court denies Defendant's Motion.

<u>**Background Facts**</u>

According to Plaintiff's First Amended Complaint, Plaintiff is an Ohio corporation that manufactures bellows assemblies.  Defendant Jason Cole worked for Plaintiff from June 2012 through March 2015 as a business development manager.  Cole lived in Texas and performed his work remotely from Texas.  Cole's job involved the "development and use of highly sensitive and confidential sales, operational and marketing information and strategies

for key customers and prospects; building relationships with and sales to key customers and prospects; ascertaining the needs of potential customers and prospects; developing products and products lines in order to successfully compete for the continued business of existing customers and the future business of prospects (including secret new products); and pricing strategies."  (First Amended Complaint ¶ 7).   As part of his employment, Cole signed  Non-Compete and Non-Disclosure Agreements. The Non-Compete Agreement prohibits Cole from:

> "help[ing] competitors complete [sic], directly or indirectly, with Alloy Bellows in any way"; "participat[ing] in the sale to any customer or prospect of Alloy Bellows or its affiliates of products or services which are similar to those sold to such customers and/or prospects by Alloy Bellows"; or "directly or indirectly engag[ing] in any business that completes [sic] with Alloy Bellows in any way in North America, or any other geographical area in which Alloy Bellows conducts such business…."

(First Amended Complaint ¶ 11).

> The Non-Disclosure Agreement prohibits Cole from:

> "disclos[ing] to any person, firm, or corporation, any information, trade secrets, formulae, technical data or know-how relating to the Company's products, processes, methods, equipment or business practices which he/she has acquired or may acquire while in the employ of the Company until such information shall have become public knowledge…." The Non-Disclosure Agreement further provides that Cole "will not take with him…without the Company's consent, any drawing, document, or blueprint or copy or transcript thereof…and at the time [of separation]… will turn over to [Alloy Bellows] all records, drawings and documents and copies and transcripts thereof relating to the Company's business which are in his/her possession or under his/her control."

(First Amended Complaint ¶ 12).

According to the First Amended Complaint, Cole began negotiating with Senior Flexonics, Inc., a direct competitor of Alloy Bellows, and eventually left Plaintiff's employ to

2

work for Senior Flexonics in violation of the Non-Compete Agreement.  Plaintiff also contends that while negotiating his new position with Senior Flexonics, Cole violated the Non-Disclosure Agreement by disclosing confidential, proprietary information of Plaintiff to its competitor Senior Flexonics.  Plaintiff's First Amended Complaint alleges Breach of Contract claims on the Non-Compete and Non-Disclosure Agreements, Misappropriation of Trade Secrets and Breach of a Common Law Duty of Honest and Faithful Service.

### Defendant's Motion to Dismiss

Cole challenges the Court's personal jurisdiction over him, contending that his only connection withe State of Ohio was his employment with Plaintiff.   According to Cole, this connection alone is insufficient to confer personal jurisdiction over him by an Ohio court.  Personal jurisdiction analysis consists of two parts: 1) does it meet the long-arm requirements under Ohio law; and 2) does it comport with due process.  Cole restricts his challenges to only the due process requirements.

According to Cole, he never purposefully availed himself of the opportunity of conducting business in the State of Ohio.  Cole contends his only connection to Ohio is his employment contract with an Ohio based company.  He admits signing the Agreements in Ohio however, he argues he never sold products in Ohio, instead, he was retained to service Texas, Louisiana and California.  He further admits to traveling to Ohio at least eight times for business over his three year term with Defendant.  The only reason he traveled to Ohio was because Defendant chose to be headquartered there.

Cole further contends Plaintiff's claims did not arise from his actions in the State of Ohio.  Any alleged breach of the Non-Compete and Non-Disclosure Agreements occurred

outside the State of Ohio because Cole lives and works in Texas.  Any contacts with competitors or customers of Defendant necessarily occurred in Texas.

Furthermore, Cole argues any exercise of personal jurisdiction by this Court over him would be unreasonable because:  it would place a great burden on him to defend the action so far from his place of residence; any customers he allegedly solicited are located outside the State of Ohio and Ohio has little to no economic interest in the case because the alleged bad acts occurred outside Ohio and had very little impact on Ohio.

In the alternative, Cole asks the Court to transfer the action to the Western District of Texas because Defendant resides there and the customers he is alleged to have improperly attempted to convert are located there.

## Plaintiff's Opposition

Plaintiff contends Cole has substantial contacts with the State of Ohio rendering him subject to the Court's jurisdiction.  According to Plaintiff, Cole interviewed for his position with Plaintiff in Ohio, signed both the Non-Compete and Non-Disclosure Agreements in Ohio, received job orientation in Ohio, his job required he email and call Ohio on a daily basis and Cole traveled to Ohio on numerous occasions to meet with Plaintiff employees, staying anywhere from two to four days in Ohio on each visit totaling at least ten times in the years he was employed by Plaintiff.  Plaintiff further contends Cole copied confidential customer and company information from Plaintiff's computer system without authorization. The computer system is housed in Ohio, therefore, Cole improperly removed information from Ohio without authorization.  Also, Cole returned his work laptop to Plaintiff after having it scrubbed clean and removing files belonging to Plaintiff.

4

Furthermore, Cole's new employer is based out of Chicago Illinois, not Texas and the recruiter Cole worked with at Flexonics has a Chicago based phone number.  Lastly, Cole's customers were not located primarily in Texas but instead were located all over the world.  The greater balance of witnesses will not be in Texas but Ohio, followed by Illinois.

## LAW AND ANALYSIS

### Standard of Review

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(2), the court applies a two-step inquiry when examining if it has personal jurisdiction over the parties.  "First, we must determine whether Ohio law authorizes jurisdiction.  If it does, we must determine whether that authorization comports with the Due Process Clause of the Fourteenth Amendment." *Estate of Thomson ex rel. Estate of Rakestraw v. Toyota*, 545 F.3d 357, 361 (6th Cir. 2008).  Where personal jurisdiction is challenged in a Rule 12(b)(2) motion, the plaintiff has the burden of establishing that personal jurisdiction exists.  *Weller v. Cromwell Oil Co.*, 504 F.2d 927 (6th Cir. 1974).  However, the nature of plaintiff's burden changes depending on the manner in which the district court approaches the motion.  *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1168 (6th Cir. 1988).  When a court approaches a motion to dismiss for lack of personal jurisdiction based solely on written materials and affidavits, "the burden on the plaintiff is relatively slight, . . . and the plaintiff must make only a prima facie showing that personal jurisdiction exists in order to defeat dismissal[.]"  *Ampco System Parking v. Imperial Parking Canada Corp.*, No. 1:11CV1172, 2012WL1066784, at *2 (N.D. Ohio Mar. 28, 2012) (quoting *Air Prods., & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007).  Plaintiff need only establish jurisdictional claims with "reasonable particularity"

5

and the pleadings and affidavits are construed in the light most favorable to plaintiff. *Id.* The burden is on the plaintiff, however, to establish that jurisdiction exists, and the plaintiff may not merely stand on his pleadings in the face of a properly supported motion for dismissal. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). The plaintiff must set forth specific facts showing that the court has jurisdiction. *Id.* Therefore, dismissal is proper only if all the specific facts which the plaintiff alleges collectively fail to state a prima facie case for jurisdiction. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996).

**B. Personal Jurisdiction**

Plaintiff bears the burden of establishing the Court's exercise of personal jurisdiction over Cole meets the requirements of both Ohio's long-arm statute and the limits of the Constitutional Due Process Clause. *Id.* Ohio's long-arm statute does not extend to the constitutional limits of the Due Process Clause; therefore, this becomes a threshold issue to determine jurisdiction. *Calphalon Corp. V. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000).

**1. Ohio's Long Arm Statute**

Plaintiff alleges Cole's actions implicate four subsections of Ohio's long-arm statute which read in pertinent part:

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

(1) Transacting business in this state ; [or]

(3) Causing tortious injury by an act or omission in this state.

(4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state.

6

(6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state;

O.R.C.  § 2307.382 (A)(1)(3)(4) and (6).

Given the "relatively slight" burden on Plaintiff to show personal jurisdiction and construing the pleadings and affidavits in Plaintiff's favor, the Court finds Plaintiff has established sufficient contacts with the State of Ohio satisfying Ohio's long-arm statute.[1]  The Ohio Supreme Court has held that to 'transact business' is "to prosecute negotiations; to carry on business; [or] to have dealings."  *Faurecia Exhaust Sys., Inc. v. Walker*, 464 F. Supp. 2d 700, 705-06 (N.D. Ohio 2006) citing *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St. 3d 73, 75 (1990).    Here, Defendant entered into the Non-Compete and Non Disclosure Agreements in Ohio with an Ohio company.  Courts within this Circuit had held "'[t]ransacting business' subsumes the narrower act of contracting." *Stern's Dept's Stores, Inc. v. Herbert Mines Assoc.,* No. C–1–98–844, 1999 U.S.Dist. LEXIS 10805, at *15 (S.D.Ohio July 8, 1999) (citations omitted) (quoting *Douglas v. Modern Aero, Inc.,* 954 F.Supp. 1206, 1210 (N.D.Ohio 1997)).  The Supreme Court of Ohio has held that transacting business "encompasses 'to carry on business,' and 'to have dealings,' and is broader ... than the word 'contract.' " *Goldstein v. Christiansen*, 70 Ohio St. 3d 232, 235 (1994) (quoting *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear Inc.,* 53 Ohio St.3d 73 (1990)).  Therefore, while the mere existence of a contract may not be enough to confer personal jurisdiction, a contract

---

[1]     Cole limits his arguments against personal jurisdiction to lack of due process and does not present arguments on Ohio's long-arm statute.

7

may qualify as transacting business under Ohio's long-arm statute.

Here, Plaintiff offers the affidavit of Michael Canty, President of Alloy Bellows, attesting that Cole was employed by Defendant from May 2012 to March 2015.  He attests that Cole contracted for employment with Defendant in Ohio, signed his Non-Compete and Non-Disclosure Agreements in Ohio and called and emailed Defendant's office in Ohio daily in the course and scope of his duties.   Cole regularly traveled to Ohio for meetings and training, totaling approximately ten times in the course of his term with Plaintiff.

Cole's job was to market and sell Plaintiff's Ohio produced products for which he was paid by Plaintiff, an Ohio company.   The Agreements contained continuing contractual obligations not to compete with an Ohio based company and not to disclose Plaintiff's business secrets.  It is the breach of these Agreements that form the crux of Plaintiff's claims. "The Sixth Circuit has held that 'if the cause of action is for breach of that contract [with an Ohio resident] ... then the cause of action naturally arises from the defendant's activities in Ohio.'"*ALTA Analytics, Inc. v. Muuss*, 75 F. Supp. 2d 773, 779 (S.D. Ohio 1999)quoting *Cole v. Mileti,* 133 F.3d 433, 436 (6th Cir.1998).

Furthermore, Plaintiff's claim for misappropriation of trade secrets contends Cole took from Plaintiff's computer system, housed in Ohio,  trade secrets without authorization.  This allegation is also supported by Canty's affidavit.  Therefore, Section (A)(6) of Ohio's long-arm statute is satisfied in that by removing Plaintiff's confidential trade secrets from Plaintiff's Ohio based computer system, Cole caused injury in the State of Ohio by his tortious conduct.  Therefore, Plaintiff has met its prima facie burden demonstrating Cole transacted business in Ohio through his numerous, systematic contacts with the State of Ohio

8

via regular meetings and training in Ohio, daily calls and emails to Ohio to report to his Ohio based supervisor and caused tortious injury in Ohio by his alleged misappropriation of Plaintiff's confidential business information taken from Plaintiff's Ohio based computer system.  Furthermore, he marketed and sold Ohio manufactured product for his Ohio based employer and was paid from Ohio.

### 2. Due Process

If jurisdiction is proper under Ohio's long arm statute, the Court must next determine whether Cole's contacts with Ohio were sufficient under the Fourteenth Amendment Due Process Clause to allow the Court to exercise jurisdiction.  In order for personal jurisdiction to comply with due process, Defendants must have "minimum contacts" with the forum state "so that the maintenance of the action does not offend 'traditional notions of fair play and substantial justice.' "  *Citizens Bank v. Parnes*, 376 F. App'x 496, 502 (6th Cir. 2010). "Minimum contacts exist where a defendant's conduct and connection with the forum state are such that he would reasonably anticipate being haled into court there."  *Id.* (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

There are two types of personal jurisdiction: 1) general jurisdiction, which requires "a showing that the defendant has continuous and systematic contacts with the forum state sufficient to justify the state's exercise of judicial power with respect to any and all claims the plaintiff may have against the defendant,"  and 2) specific jurisdiction, "which exposes the defendant to suit in the forum state only on claims that 'arise out of or relate to' a defendant's contacts with the forum."  *Kerry Steel, Inc. v. Paragon Indus*., 106 F.3d 147, 149 (6th Cir.1997).

9

The Sixth Circuit has concluded that "Ohio law does not appear to recognize general jurisdiction over non-resident defendants, but instead requires that the court find specific jurisdiction under one of the bases of jurisdiction listed in Ohio's long-arm statute." *Conn v. Zakharov,* 667 F.3d 705, 717 (6th Cir. 2012). Therefore, the Court will analyze whether it has personal jurisidiction over Cole under the specific jurisdiction prong of the due process inquiry.

The Sixth Circuit has articulated a three-part test for determining whether the exercise of specific personal jurisdiction comports with due process:

> First, the defendant must purposely avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Kerry Steel*, 106 F.3d at 150 (quoting *Southern Mach. Co. v. Mohasco Indus., Inc*., 401 F.2d 374, 381 (6th Cir.1968)).

The purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random, fortuitous, or attenuated contacts." *MMK Group, LLC v. SheShells Co., LLC*, 591 F.Supp.2d 944, 956 (N.D. Ohio 2008). Cole contends his only tie to Ohio is his employment with Defendant. Cole relies on *Calphalon Corp. v. Rowlette*, 228 F.3d 718 (6th Cir. 2000) in asserting that an employment relationship alone does not rise to the level of purposeful availment. In *Calphalon*, the Sixth Circuit found that personal jurisdiction did not exist over a non-resident defendant who represented the plaintiff outside the forum state for approximately

10

eighteen years.  *Id.*  Though the defendant corresponded with the plaintiff via telephone, fax and mail, and visited Ohio for company related functions, the Court found no personal availment because defendant's actions did not "create continuous and substantial consequences [in the forum state]."  *Id.*

The instant case can be distinguished from *Calphalon* as Cole reached in to Ohio by contracting in Ohio, the substance of which created continuing obligations not to compete or disclose confidential information of Plaintiff.  Furthermore, Cole reached into an Ohio-based computer system to extract the confidential information and copied it to his personal files.  These contacts could undoubtedly create substantial consequences within Ohio, and therefore, reliance on *Calphalon* is unavailing.

This Court finds it dispositive that, in addition to entering into ongoing obligations with an Ohio corporation, working with and communicating daily with Ohio employees, traveling to Ohio on numerous occasions for meetings and training, Cole purposely reached into Ohio to copy confidential files, allegedly violating the terms of the Agreements.  In *The RightThing, LLC v. Brown*, No. 3:09-CV-135, 2009 WL 249694, at *5 (N.D. Ohio Feb. 2, 2009), this Court found purposeful availment satisfied when a non-resident employee removed files that allegedly contained trade secrets from an Ohio-based database.  *Id.*  In doing so, the Court found she "reached the State of Ohio through her computer wires."  *Id.*  In this case, Cole's contacts with Ohio were numerous, ongoing and continual.  In addition to reaching Ohio through his computer wires, he engaged in an ongoing relationship with an Ohio corporation during which he personally interacted and received instructions from Ohio-based employees.

11

Furthermore, courts generally will find the personal availment element met when an employee enters into an employment agreement with a forum state corporation and has some additional contact with that state.  In *Int'l Paper Co. v. Goldschmidt*, No. 1:11-CV-910, 2012 WL 1902557, at *5 (S.D. Ohio May, 25, 2012), the Court found personal availment satisfied when a California employee entered into an employment contract with an Ohio corporation and frequently communicated with Ohio-based employees, received confidential and trade secret information from Ohio, utilized an Ohio-based database system, and visited Ohio for two business meetings.   These actions mirror Cole's acts in the above-captioned case.  Consequently, the Court finds the purposeful availment prong satisfied.

Under the second prong, where "a defendant's contacts with the forum state are related to the operative facts of the controversy, the  action will be deemed to have arisen from those contacts."  *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1267 (6th Cir. 1996).   Cole argues that the arising from requirement is not satisfied here because the alleged breaches occurred in Texas, not Ohio.  Cole lives and works in Texas and, while employed by Plaintiff, dealt primarily with Texas, Louisiana and California clients.  Thus, he argues any alleged improper contact with these clients necessarily occurred outside Ohio.

The Court disagrees.  Cole's alleged contacts with Ohio, namely contracting with an Ohio company in Ohio, obtaining confidential information of an Ohio company and allegedly accessing and copying data files located in an Ohio computer system, are directly related to Plaintiff's claims.  As previously stated, "if the cause of action is for

12

breach of that contract [with an Ohio resident] ... then the cause of action naturally arises from the defendant's activities in Ohio."*ALTA Analytics, Inc. v. Muuss*, 75 F. Supp. 2d 773, 779 (S.D. Ohio 1999) quoting  *Cole v. Mileti,* 133 F.3d 433, 436 (6th Cir.1998). Moreover, Plaintiff's Misappropriation of Trade Secrets claim alleges Cole removed, without authorization, Plaintiff's confidential information stored on Plaintiff's Ohio based computer system.  Therefore, Cole's actions arise out of his contact with the State of Ohio.

Under the final prong of the specific jurisdiction analysis the Court must determine whether "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Kerry Steel*, 106 F.3d at 150.  According to Sixth Circuit precedent, "where the first two prongs are satisfied, only the unusual case will not meet this third criterion." *Aristech Chem. Int'l Ltd. v. Acrylic Fabricators Ltd.*, 138 F.3d 624, 628 (6th Cir. 1998).  To determine reasonableness, the Court must balance three factors: "the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." *Fortis Corporate Ins. v. Viken Ship Mgmt.,* 450 F.3d 214, 223 (6th Cir. 2006) (internal citations omitted).  Here, while unquestionably defending himself in Ohio will be burdensome on Cole, it is not unduly so.  Cole traveled to Ohio at least eight times over the course of his employment with Plaintiff, staying days at a time on each trip.  If it were not unduly burdensome for Cole to travel to Ohio from Texas while employed by Plaintiff, it is not unduly burdensome now that he is employed by another employer.

Furthermore, Ohio has a strong  interest in ensuring the enforcement of its laws, protecting its businesses from unauthorized misappropriation of business secrets and enforcing contracts.  Plaintiff  undoubtedly has an interest in protecting its trade secrets and maintaining its customers.  The Court finds this is not that rare instance where Defendant's contacts with Ohio are so minimal that such burden outweighs the interests of Ohio.  Based on all of the foregoing, Cole's Motion to Dismiss for Lack of Personal Jurisdiction is denied.

**Motion to Transfer Venue**

Cole argues alternatively that the Court transfer venue to Texas, where Cole resides and where Cole contends the majority of clients he is alleged to have tampered with reside.  Cole contends that the majority of witnesses and discovery is located in Texas, therefore, venue is more appropriate in Texas.

Cole brings his Motion pursuant to 28 U.S.C. §1404(a), which reads, "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  "Congress intended to give district courts the discretion to transfer cases on an individual basis by considering convenience and fairness." *Kerobo v. Southwestern Clean Fuels, Corp.* 285 F.3d 531, 537 (6th Cir. 2002).  "Section 1404(a) permits a change of venue for the convenience of parties and witnesses.  However, a transfer under section 1404(a) may not be granted when the district court does not have personal jurisdiction over the defendants." *Pittock v. Otis Elevator Co.*, 8 F.3d 325, 329 (6th Cir. 1993).  Having found that the Court has personal jurisdiction over Cole; §1404(a)

14

applies.

Cole attests that none of his Alloy Bellows' customers reside in Ohio.  He further attests that his current supervisors are not  Ohio residents.  Therefore, Texas is the better venue.

Plaintiff contends that the factors to be considered by the Court do not favor transfer.  Plaintiff argues that the balance of customers alleged to have been tampered with by Cole are located all over the world, thus, there is no greater number of witnesses located in Texas.  Moreover, Plaintiff contends the majority of witnesses will be Plaintiff's employees who are located in Ohio.  Plaintiff contends Cole's new employer is located in Illinois therefore, any witnesses concerning non-disclosure or non-compete are also not located in Texas.

Plaintiff offers the affidavit of Canty, who attests that all of Cole's supervisors, human resource personnel and engineers who worked with Cole while he was employed by Plaintiff reside in Ohio except for one presently located in Florida.  These total over a dozen people, favoring Ohio as the appropriate venue.  Furthermore, Canty attests Cole's new employer is located in Illinois as are Cole's present supervisor, recruiter and coworkers.  Canty further attests that Cole's Alloy Bellows' customers were not primarily located in Texas, but are scattered all over the world.  Thus, none of these factors favor Texas other than Cole's own presence there.

In light of the above evidence, the Court finds the majority of witnesses will be located in Ohio and customer locations throughout the world and therefore, weigh no more in favor of Texas than Ohio.  Because Cole's new employer is located in Illinois

15

and Ohio is closer in distance to Illinois than Texas, this factor further favors venue in Ohio.   Thus, the Court finds Ohio presents the most convenient venue for the parties and witnesses and denies Defendant's Motion to Transfer Venue.

Therefore, for the foregoing reasons, the Court finds it has personal jurisdiction over Cole and denies his Motion to Dismiss for Lack of Personal Jurisdiction.  The Court further denies Cole's Motion, in the Alternative, to Transfer Venue.

IT IS SO ORDERED.


s/ Christopher A. Boyko
CHRISTOPHER A. BOYKO
United States District Judge

Dated:  November 10, 2015

16