**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ALLOY BELLOWS & PRECISION WELDING, INC.,** | ) | **CASE NO.1:15CV494** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **JASON COLE, ET AL.,** | ) | **ORDER** |
| | ) | |
| **Defendant.** | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Plaintiff Alloy Bellows & Precision Welding, Inc.'s Renewed Motion for Preliminary Injunction and Temporary Restraining Order (ECF # 40). Because Plaintiff has failed to show by clear and convincing evidence it has a substantial likelihood of success on the merits of its claims, the Court denies Plaintiff's Motion.

According to Plaintiff's First Amended Complaint, Plaintiff is an Ohio corporation that manufactures bellows assemblies. Defendant Jason Cole ("Cole") worked for Plaintiff from June 2012 through March 2015 as a business development manager. Cole lived in Texas and performed his work remotely from Texas. Cole's job involved the "development and use of highly sensitive and confidential sales, operational and marketing information and

strategies for key customers and prospects; building relationships with and sales to key

customers and prospects; ascertaining the needs of potential customers and prospects;

developing products and products lines in order to successfully compete for the continued

business of existing customers and the future business of prospects (including secret new

products); and pricing strategies."  (First Amended Complaint ¶ 7).   As a condition of his

continued employment, Cole was required to sign a Non-Compete and a Non-Disclosure

Agreement. The Non-Compete Agreement prohibited Cole from:

> "help[ing] competitors complete [sic], directly or indirectly, with Alloy
> Bellows in any way"; "participat[ing] in the sale to any customer or prospect
> of Alloy Bellows or its affiliates of products or services which are similar to
> those sold to such customers and/or prospects by Alloy Bellows"; or "directly
> or indirectly engag[ing] in any business that completes [sic] with Alloy
> Bellows in any way in North America, or any other geographical area in which
> Alloy Bellows conducts such business…."

(First Amended Complaint ¶ 11).

> The Non-Disclosure Agreement prohibited Cole from:

> "disclos[ing] to any person, firm, or corporation, any information, trade
> secrets, formulae, technical data or know-how relating to the Company's
> products, processes, methods, equipment or business practices which he/she
> has acquired or may acquire while in the employ of the Company until such
> information shall have become public knowledge…." The Non-Disclosure
> Agreement further provides that Cole "will not take with him…without the
> Company's consent, any drawing, document, or blueprint or copy or transcript
> thereof…and at the time [of separation]… will turn over to [Alloy Bellows] all
> records, drawings and documents and copies and transcripts thereof relating to
> the Company's business which are in his/her possession or under his/her
> control."

(First Amended Complaint ¶ 12).

According to the First Amended Complaint, Cole began negotiating with Senior

Flexonics, Inc., a direct competitor of Alloy Bellows, and eventually left Plaintiff's employ to

work for Senior Flexonics in violation of the Non-Compete Agreement.  Plaintiff also contends that while negotiating his new position with Senior Flexonics, Cole violated the Non-Disclosure Agreement by disclosing confidential, proprietary information of Plaintiff to Senior Flexonics.  Plaintiff's First Amended Complaint alleges Breach of Contract claims on the Non-Compete and Non-Disclosure Agreements, Misappropriation of Trade Secrets and Breach of a Common Law Duty of Honest and Faithful Service.

On March 29, 2016, the Court granted Plaintiff's Motion for Leave to File a Second Amended Complaint adding Senior Flexonics as a defendant in the case.  Plaintiff alleged that recent discovery uncovered Senior Flexonics' role in obtaining Plaintiff's trade secrets. However, the Injunction Motion applies only to Cole.

Plaintiff originally filed a Motion for Preliminary Injunction on March 24, 2015. Defendant moved to dismiss for lack of personal jurisdiction and requested a stay of the Preliminary Injunction ruling until the Court resolved the jurisdictional question.  The Court granted Defendant's motion to stay.  After the Court issued its ruling finding it had jurisdiction over Defendant, the parties proposed a limited discovery and briefing schedule on the Preliminary Injunction Motion which the Court adopted in part.  The Court mooted the original Preliminary Injunction Motion and ordered Plaintiff to refile upon completion of the limited discovery.  The renewed motion is now fully briefed.  On April 4, 2016, the Court held a hearing on Plaintiff's Motion.

**<u>Standard of Review</u>**

Injunctive relief is an extraordinary remedy and is issued cautiously and sparingly. *See Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312-313 (1982).

Four factors must be considered when deciding whether to grant an injunction: (1) whether the movant has a strong likelihood of success on the merits; (2) whether there is a threat of irreparable harm to the movant; (3) whether others will suffer substantial harm as a result of the injunction, should it issue; and (4) whether the public interest will be served by the injunction. *See Rock & Roll Hall of Fame and Museum, Inc. v. Gentile Prods.*, 134 F.3d 749, 753 (6th Cir. 1998); *Vittitow v. Upper Arlington*, 43 F.3d 1100, 1109 (6th Cir. 1995) (the four factors are "not prerequisites to be met, but factors to be balanced."); *D.B. v. Lafon*, 2007 U.S. App. LEXIS 3886 (6th Cir. 2007).  While no single factor will be determinative as to the appropriateness of the equitable relief sought, (*In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985)), "a finding that there is simply no likelihood of success on the merits is usually fatal."  *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000).

The moving party must establish its case by clear and convincing evidence.  *See Deck v. City of Toledo*, 29 F.Supp.2d 431, 433 (N.D. Ohio 1998), *citing Garlock, Inc., v. United Seal, Inc*., 404 F.2d 256, 257 (6th Cir. 1968).

The Sixth Circuit has held that the standard for obtaining a temporary restraining order and the standard for obtaining a preliminary injunction are the same.  *Workman v. Bredesen*, 486 F.3d 896 (6th Cir. 2007); *Gentile Prods., supra*.

**Plaintiff's Preliminary Injunction/TRO Motion**

Plaintiff alleges Cole is employed by Senior Operations, LLC d/b/a Senior Flexonics in a position virtually identical to the one he had with Plaintiff.  Senior Flexonics is one of

4

Plaintiff's top competitors, competes for the same customers, manufactures substitute products for the same applications and competes for the same prospects in the product development stage.  In December 2014, Senior Flexonics attempted to acquire Plaintiff but was unsuccessful.  Shortly thereafter, Cole resigned his position with Plaintiff and went to work for Senior Flexonics.

According to Plaintiff, bellows are highly specialized components sold to a limited number of customers.  Given that it is such a niche market, Plaintiff was concerned that unless Cole stayed away from the bellows market he would inevitably pursue the same existing customers he had with Plaintiff.  Plaintiff feared Cole may also solicit the same prospects he attempted to obtain as customers for Plaintiff, would work on the same product lines and market strategies and would be in a position to use the proprietary knowledge he acquired while employed by Plaintiff.  These trade secrets include design solutions on products, pricing strategies, confidential customer lists, sales data, margin information and proprietary methods of manufacturing.

In Cole's deposition, Cole admitted working in the same capacity for Senior Flexonics that he worked for Plaintiff.  Senior Flexonics agreed to indemnify Cole against any damages arising from alleged violations of his agreements with Plaintiff and is paying for Cole's legal representation.

Plaintiff alleges Cole, while employed by Senior Flexonics, tried to develop a product for a customer Cole worked with while employed by Plaintiff.  Cole has acknowledged continuing to work with four customers or prospects at Senior Flexonics that he previously worked with while employed by Plaintiff.

Plaintiff further alleges Cole has retained confidential documentation that his Non-Disclosure Agreement required he return to Plaintiff upon ending his employment.  Plaintiff uncovered evidence that Cole scrubbed his work laptop issued by Plaintiff but emailed himself Plaintiff's confidential documentation to a personal email account.  Furthermore, Cole allegedly copied confidential customer contact lists and ongoing project information to a flash drive.

Plaintiff contends it has a strong likelihood of success on the merits on its Breach of the Non-Compete agreement because it is narrowly drafted to forbid working for actual competitors and it is limited in duration to two years.  The agreement does not prevent Cole from working as a salesman in other fields but instead only prevents him from working for direct competitors in the niche market of bellows.

Plaintiff further argues it has a strong likelihood of success on the merits of its Breach of the Non-Disclosure agreement because Cole admitted copying and retaining Plaintiff's confidential information including: design solutions, pricing strategies, customer lists, sales data, margin information and methods of manufacturing.  Disclosure of this confidential information has and will cause irreparable harm to Plaintiff by causing it to lose the opportunity to fairly compete in the market.  Furthermore, the public interest is served by enforcing freely contracted-for obligations while discouraging the misappropriation of trade secrets.  Therefore, Plaintiff ask the Court to enjoin Cole from employment with Senior Flexonics for the duration of the two year term found in the Non-Compete agreement, enjoin Cole from further violations of both agreements and further misuse of Plaintiff's confidential information.

6

### Cole's Opposition to Preliminary Injunction/TRO

Cole disputes the claims asserted by Plaintiff.  Cole contends the bellows market is not a "niche" market but is actually quite broad and serves a number of markets.  Cole has always worked from his home in Texas and sold products to customers in California, Texas, Louisiana and Singapore.  Cole became disenchanted with Plaintiff due to Plaintiff's inability to fulfill customer orders, which Cole believed had a negative impact on Cole's business reputation.  Cole was also unhappy with his compensation while employed by Plaintiff.  Cole alleges he reached out to Senior Flexonics about a position in February of 2015.  He accepted an offer from Senior Flexonics in March of 2015.  Cole was instructed to email customers with whom he was working that Donald Scanlon, Plaintiff's Director of Sales, would be handling their accounts in the future.  Cole was inadvertently included in an email amongst managers at Plaintiff that Plaintiff would be filing suit against Cole.  Cole resigned immediately rather than stay on for a short term to help customers transition to Scanlon.

Cole began working for Senior Flexonics in March 2015 and structured his new position to "wall off" his contacts with customers he knew to be customers of Plaintiff.

Cole contends Plaintiff is unlikely to prevail on the merits because the agreements are poorly drafted and the plain unambiguous terms of the agreements demonstrate Cole did not violate them.  For instance, the Non-Compete agreement states in pertinent part: "Either during your working relationship with Alloy Bellows, or for a period of two (2) years after your working relationship and/or severance period ends...." Regardless of the intent, the plain language is an either/or clause.  Since there is no allegation Cole worked for a competitor while employed with Alloy Bellows, Cole has not breached the Non-Compete agreement per

its plain language.

Furthermore, Cole contends the Non-Compete agreement is unenforceable because it was never signed by Plaintiff's President and CEO Michael Canty.  This violates Plaintiff's own Welcome Book policy which reads " any employment agreements entered into by Plaintiff will not be enforceable unless it is in a formal written agreement and signed by you and the President and Chief Executive Officer."  Neither agreement was signed by Plaintiff's President and CEO.

Next, Cole argues the Non-Compete agreement is overly broad and not narrowly tailored because all Plaintiff's employees are required to sign them, therefore, they are not tailored to Plaintiff's job duties and geographic area.  Nor is it restricted to the geographic areas Cole worked but instead restricts him from working anywhere Plaintiff conducts business.

Also, Cole took steps to wall himself off from Plaintiff's business.  Cole never solicited Plaintiff's employees, nor has Plaintiff produced evidence it lost any business because of Cole.  In fact, Plaintiff's have no evidence Cole called on any of Plaintiff's customers while Cole has been in Senior Flexonics' employ.  Cole argues restrictive covenants cannot bar an employee like Cole from contacting prospective customers of Plaintiff simply because a business could potentially buy bellows from Plaintiff.  These are not customers and Cole cannot be restrained by such a broad interpretation of customer.

Cole further contends that the names of customers are not confidential under any of the terms of the Non-Disclosure agreement.  The Non-Disclosure agreement outlines a number of categories of confidential information but customer names are noticeably absent.

8

Also, much of what Plaintiff alleges as the improper retention of confidential information is factually incorrect.  Many of the alleged confidential emails were sent well before Cole contacted Senior Flexonics.  One customer, BST, was not a customer of Plaintiff when Cole left Plaintiff's employ.  Also, much of the information Plaintiff alleges is confidential is publicly available information on the internet.

Cole disclaims the use of any email containing Plaintiff's confidential information in his job with Senior Flexonics.  Cole further alleges he never deleted any of Plaintiff's business information from his Plaintiff issued laptop.

Cole argues Plaintiff has offered no evidence that it was injured in any way by Cole's conduct while any injunction against Cole's continued employment with Senior Flexonics would cause irreparable harm to Cole.

**Law to be Applied**

The parties dispute the law to be applied when interpreting the contracts at issue. However, at this juncture, the evidence before the Court indicates the parties signed the agreements in Ohio.  "A federal court sitting in its diversity jurisdiction applies the choice of law rules of the forum state."  *Miller v. State Farm Mut. Auto. Ins. Co.,* 87 F.3d 822, 824 (6th Cir. 1996).  "It is well-settled in Ohio that in cases involving a contract, the law of the state where the contract is made governs interpretation of the contract." *Nationwide Mut. Ins. Co. v. Ferrin* (1986), 21 Ohio St.3d 43, 44, 21 OBR 328, 329, 487 N.E.2d 568, 569.  Therefore, the Court will apply Ohio law.

**Are the Contracts Enforceable ?**

9

Cole challenges the enforceability of the Non-Compete and Non-Disclosure agreements on several bases. The Non-Compete and Non-Disclosure agreements were attachments to Alloy Bellows' Welcome Book employee handbook. Cole signed an acknowledgment that he received the handbook on the same day he signed the agreements. By signing that he received the handbook, Cole also agreed to abide by its policies.

In section 1.1 of the handbook it reads:

Further, any employment agreement entered into by the Company will not be enforceable unless it is in a formal written agreement and signed by you and the President and Chief Executive Officer.

It is undisputed that neither the Non-Compete Agreement nor the Non-Disclosure agreements, signed by Cole, were signed by the President and CEO of Alloy Bellows. Therefore, according to Cole, per the plain terms of Alloy Bellows' own employment handbook, the agreements are unenforceable.

There is no dispute that Plaintiff was an at-will employee of Alloy Bellows as defined in the terms of his employment offer. That offer disclosed that Cole would also be expected to sign non-disclosure and non-compete agreements. He signed the offer of employment on May 21, 2014. On June 4, 2012, Cole traveled to Ohio and acknowledged receipt of the employee handbook. The Acknowledgment included his agreement "to abide by the policies and procedures contained" in the handbook. The handbook expressly disclaimed it was a contract of employment. This disclaimer is entirely consistent with Ohio law. "[E]mployee handbooks are not in and of themselves a contract for employment." *Wright v. Honda of America Mfg., Inc.* 73 Ohio St.3d 571, 575, 653 N.E.2d 381, 384 (1995).

However, a handbook may contain terms and conditions of employment. "[A]n

employee handbook may provide the terms and conditions of an at-will employment relationship ... if the employer and employee manifest an intention to be bound by the handbook provisions." *Finsterwald–Maiden v. AAA S. Cent. Ohio,* 115 Ohio App.3d 442, 446, 685 N.E.2d 786, 789 (Ohio App.[4] Dist.1996).  In the absence of any expression of mutual assent  "the handbook is simply a unilateral statement of rules and policies that creates no obligation or rights." *Id.*   "When the handbook disclaims intent to create a contract or provides that it may be unilaterally amended or altered by the employer at any time, there is no mutual assent to be bound."  *Senter v. Hillside Acres Nursing Ctr. of Willard, Inc.,* 335 F. Supp. 2d 836, 843 (N.D. Ohio 2004); see also *Abel v. Auglaize County Highway Dept.,* 276 F.Supp.2d 724, 742 (2003); *Karnes v. Doctors Hospital,* 51 Ohio St.3d 139, 141, 555 N.E.2d 280 (1990); *Finsterwald–Maiden,* 115 Ohio App.3d at 447, 685 N.E.2d at 789–90.  These holdings demonstrate that an employee handbook that expressly disclaims any intent to create an employment contract cannot be construed to create an employment contract.  However, the issue before the Court is not whether the handbook created an enforceable employment contract but rather the effect of the handbook's pronouncement that no employment agreement is enforceable absent the signature of the President and CEO.

Plaintiff acknowledges that a non-compete agreement, offered to an at-will employee, "is, in effect, a proposal to renegotiate the terms of at-will employment." (Plaintiff's Reply pg. 9).  Plaintiff correctly states that continued employment is sufficient consideration to make the Non-Compete and Non-Disclosure agreements enforceable.  However, the Court must ascertain the intent of the parties, in light of Plaintiff's policy on enforceability. Plaintiff's President and CEO reportedly signed the "Initial Things to Know" portion of the

11

employee handbook containing the dual signature enforceability requirement.[1]   Plaintiff's President did not sign the Non-Compete or the Non-Disclosure agreements.  Plaintiff contends these agreements accompanied the employee handbook, are referenced in it and, because the President signed the handbook, there was no conflict between the handbook and subsequent agreements.  However, this presents issues of fact concerning the intent of the parties.  First, the Court has no copy of the handbook signed by Canty.  Second, even if Canty's signature was on the handbook, there is a genuine issue whether such a signature would satisfy the handbook requirement that subsequent employment agreements be in writing and signed by both parties.   It is Plaintiff's burden to demonstrate by clear and convincing evidence it is entitled to injunctive relief because it has shown a substantial likelihood of success on the merits.  Plaintiff has not met its burden.  Ohio courts have enforced company policies set out in employee handbooks when the policy is clearly stated and the company intends the policy to be binding.  See *Sexton v. Oak Ridge Treatment Ctr.* 167 Ohio App.3d 593, 597 (Ohio App.4th Dist. 2006) See also *Majecic v. Universal Dev. Mgt. Corp.*, No. 2010 T-199, 2011 WL 3273964, *5 (Ohio App 11th Dist., July 29, 2011) ("Although employee handbooks, policy manuals, and the like are not contracts of employment, they may define the terms and conditions of an employment relationship if the employer and employee manifest an intention to be bound by them."  There are simply too many issues concerning the intent of the parties along with estoppel issues to merit the

---

[1]     A review of the Initial Things to Know page entered as an exhibit to Cole's deposition shows a signature block with Michael Canty's name, but no written signature.  However, in its Reply, Plaintiff expressly states "the Welcome Book was signed by the President." (Reply pg. 9).

extraordinary remedy of injunctive relief at this stage of the proceedings.   Therefore, Plaintiff's Motion for Preliminary Injunction and TRO is denied.

**Language of the Non-Compete Agreement**

Assuming *arguendo* that the Non-Compete and Non-Disclosure agreements were properly executed, the Court finds there are issues of fact concerning the Non-Compete agreement that defeat any substantial likelihood of success on the merits for Plaintiff.  The poorly drafted Non-Compete agreement is written in the disjunctive and reads in pertinent part:

> Either during your working relationship with Alloy Bellows, or for a period of two(2) years after your working relationship and/or severance period ends with Alloy Bellows, you agree and accept that you shall not, (I) directly or indirectly engage in any business that completes (sic) with Alloy Bellows in any way in North America.....

Cole argues that because the above language is written in the disjunctive, a plain reading means he was prohibited from competing with Alloy Bellows either while he worked for them or after he stopped working for Alloy Bellows, but not both.  Since there is no allegation he competed with Alloy Bellows while he worked for them, Cole contends he did not violate the express terms even if he competed with Alloy Bellows after he left its employ.

Plaintiff counters that the language above is conjunctive and any other reading is "absurd."  Furthermore, Cole's attempts to find a "clever" way around the Non-Compete indicates Cole understood it to be inclusive, forbidding competition both while employed and for a period of two years thereafter.

The Court finds the above language in the Non-Compete further militates against the issuance of an injunction order.   The use of "either, or" is disjunctive, and generally is used

13

to state a choice between two things i.e.- "Sam will either exercise or rest today."  However, in some context it may include both choices - i.e.,  "You may buy bread at either Giant Eagle or Safeway."  The intent of the parties is critical on this issue, but that is a question of fact that cannot be determined at this juncture.  Therefore, Plaintiff has not proven by clear and convincing evidence a substantial likelihood of success on the merits of its Breach of the Non-Compete agreement and its motion for injunctive relief is denied on this basis as well.

Therefore, for the foregoing reasons, Plaintiff's Renewed Motion for Preliminary Injunction and Temporary Restraining Order is denied.

IT IS SO ORDERED.


s/ Christopher A Boyko
CHRISTOPHER A. BOYKO
United States District Judge

Dated:  April 22, 2016

14